UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD SHULTZ, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 3641 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) ) | |
| | ) | |
| Defendants. | ) | |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Edward Shultz brought this suit pursuant to 42 U.S.C. § 1983 against Cook County, Illinois, and Cook County Sheriff Thomas Dart in his individual and official capacities. The amended complaint alleges that, in violation of the Fourth and Fourteenth Amendments, Shultz was denied medical care to treat his mental illness, was unlawfully held in custody and returned to Cook County Jail after a court-ordered discharge, and was injured due to the inadequate supervision provided by correctional officers upon his return to the Jail. Doc. 5. Defendants have moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 11. The motion is granted in part and denied in part.

**Background**

In considering the motion to dismiss, the court assumes the truth of the amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [amended] complaint, documents that are critical to the [amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Shultz's brief opposing dismissal, so long as those facts "are consistent with the pleadings."

1

*Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Shultz as these materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Shultz was a detainee at Cook County Jail from April 17, 2013, through May 8, 2013. Doc. 5 at ¶ 5. Cook County Jail is operated by the Cook County Sheriff's Department, which is an entity separate from Cook County. *See DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 976 (7th Cir. 2000) ("Illinois sheriffs have final policymaking authority over jail operations); *id*. at 976 n.2 (recognizing that "the Sheriff's office has a legal existence separate from the county"). Dart is the Sheriff of Cook County. Doc. 5 at ¶ 3. Cook County operates Cermak Health Services, an entity that, while separate from Cook County Jail, provides medical care to its detainees. *Id*. at ¶ 4; *see Everett v. Cook Cnty.*, 655 F.3d 723, 725 (7th Cir. 2011); *Boyce v. Moore*, 314 F.3d 884, 887 n.1 (7th Cir. 2002) ("Cermak is a separate entity from [Cook County Jail] and an extension of Cook County Hospital.").

In the course of processing Shultz into the Jail, medical personnel determined that Shultz had a serious mental illness and required psychotropic care. Doc. 5 at ¶ 6. Shultz was assigned to a medical division at the Jail known as Division 2, but was not provided with any medication or other medical care to treat his mental illness. *Id*. at ¶¶ 6-7. Without medication, Shultz had racing thoughts, was unable to sleep, and suffered severe depression. *Id*. at ¶ 7. Shultz submitted numerous medical request forms and a grievance seeking medical care, and on May 2, 2013, he was finally seen by a psychologist, who prescribed Remeron and Klonopin. *Ibid*.

On May 8, 2013, at approximately 10:00 a.m., Shultz appeared in court, pled guilty to a misdemeanor offense, was sentenced to time served, and was told by the judge that he was free to leave. *Id*. at ¶ 9. Despite being told that he was free to leave, and consistent with Dart's

policy and practice, Shultz remained in the custody of the Sheriff's Department, was detained in a holding cell at the courthouse until approximately 5:30 p.m., and then was transported back to Cook County Jail. *Ibid*. The amended complaint alleges that in 1986, Dart learned from *Gramenos v. Jewel Cos.*, 797 F.2d 432 (7th Cir. 1986), that after a person receives a court-ordered discharge from custody, the Sheriff may hold that person only for a period of time reasonably necessary to complete the administrative steps attendant to releasing that person from custody. Doc. 5 at ¶ 8. The allegation that Dart learned of *Gramenos* in 1986—when he was 24 years old, and twenty years before he became Sheriff—is implausible, but that particular detail is not material. Drawing reasonable inferences in Shultz's favor, it is plausible that Dart was apprised of the legal principles set forth in *Gramenos* and its progeny, including *Harper v. Sheriff of Cook County*, 581 F.3d 511 (7th Cir. 2009), and *Lewis v. O'Grady*, 853 F.2d 1366 (7th Cir. 1988), during his tenure as Sheriff.

Shortly after returning to the Jail at approximately 6:30 p.m., Shultz was attacked by a group of inmates in the bathroom for several minutes. *Id*. at ¶ 10. Shultz cried out for help during the attack, but no correctional officer came to his assistance, and he eventually lost consciousness. *Ibid*. Dart's practice is to permit correctional officers to be stationed in each hallway of Division 2, such that prisoners are out of the officers' sight and hearing. *Id*. at ¶ 12. In 2011, Dart learned through *Hart v. Sheahan*, 396 F.3d 887 (7th Cir. 2005), the jury verdict ultimately returned upon remand in that case, and press coverage regarding the subsequent settlement of that case that placing correctional officers outside the sight and hearing of detainees, thereby rendering them unable to be summoned for help should trouble arise, may violate the Fourteenth Amendment. Doc. 5 at ¶ 11; Doc. 17 at 11.

After the attack, pursuant to Dart's policy and procedure, correctional officers escorted Shultz to an interview room, where a sergeant began an investigation into the incident. Doc. 5 at ¶ 13. More than two hours after the incident, Shultz was transported to Mt. Sinai Hospital, where he was admitted for treatment and diagnosed with a brain hemorrhage and multiple facial and skull fractures. *Id*. at ¶ 14.

## Discussion

### I. Individual Capacity Claims Against Dart

Shultz's individual capacity claims against Dart allege the denial of medical care, unlawful detention following Shultz's court-ordered discharge, and inadequate supervision by correctional officers. Because § 1983 creates a cause of action based on personal liability and predicated upon fault, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005); *see also J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003). There being no *respondeat superior* liability under § 1983, the mere fact that Dart holds a supervisory position at Cook County Jail is insufficient to hold him liable, *see Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), even if he was negligent, *see Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) ("supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable"). "However, [a supervisory] official satisfies the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) (internal

quotation marks omitted); *see also Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1012 (7th Cir. 2000) ("An official causes a constitutional violation if he sets in motion a series of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights.").

Shultz has failed to state an individual capacity claim against Dart with respect to the allegedly inadequate medical care he received at the Jail. Shultz's opposition brief asserts that Dart is "intimately involved in the running of the Jail" and "applied a 'hands on' style of management." Doc. 17 at 8. But Shultz does not assert in his brief or allege in the amended complaint what, if any, direct personal involvement Dart had with respect to the provision of medical care at the Jail. Nor does Shultz suggest that he received allegedly deficient medical care at Dart's direction or with his knowledge or approval. Accordingly, the individual capacity medical care claim against Dart is dismissed. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 593-94 (7th Cir. 2003) (holding that the defendant sheriff was not subject to individual liability where he had no knowledge of or personal involvement in the actions leading to the alleged constitutional violation); *Maltby v. Winston*, 36 F.3d 548, 559 (7th Cir. 1994) (same).

By contrast, Shultz has stated viable individual capacity claims against Dart with respect to his allegedly unlawful post-discharge custody and inadequate supervision at the Jail. As noted above, Shultz alleges not only that Dart had a policy of keeping discharged detainees in custody, but also that he knew that such a policy resulted in unconstitutionally lengthy detentions. *Cf. Harper*, 581 F.3d at 515 ("[T]he constitutionality of this detention [between the arrestee's posting of bond and his release] depends on whether the length of the delay between the time the Sheriff was notified that bond had been posted and the time that the detainee was released was reasonable in any given case.") (internal citation omitted); *Lewis*, 853 F.2d at 1369-70 (same)

(citing *Gramenos*, 727 F.2d at 437). If those allegations are correct, and if the duration of Shultz's post-discharge custody was unduly long or its manner unacceptably unsafe—why send an unescorted free man into the general population of Cook County Jail?—then there could be the requisite causal connection between Dart's actions (or knowing inaction) and Shultz's harm to support individual liability. *See Conner v. Reinhard*, 847 F.2d 384, 396-97 (7th Cir. 1988) ("For [individual] liability under section 1983, direct participation by a defendant is not necessary. Any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable. The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights."). That is, through his alleged actions or knowing inaction, Dart "set[] in motion a series of events that [he] knew or reasonably should have known would cause others to deprive [Shultz and others like him] of [their] constitutional rights." *Brokaw*, 235 F.3d at 1012. Likewise, Shultz alleges not only that Dart had a policy of permitting correctional officers to be stationed out of sight and hearing of detainees, but also that he knew that such a policy could result in a constitutional violation. *See Hart*, 396 F.3d at 894 ("the heart of the plaintiffs' claim, with enough merit to withstand a motion to dismiss, is that the jail is subjecting them to a risk of serious harm by an unreasonably protracted detention of them *out of sight and hearing of guards*") (emphasis added). This, too, is sufficient to survive dismissal at the Rule 12(b)(6) stage.

**II.     Official Capacity Claims Against Dart and *Monell* Claims Against Cook County**

Shultz also brings claims against Cook County under the municipal liability doctrine of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and official capacity claims against Dart. A suit against a municipal official in his official capacity is equivalent to a suit

6

against the municipality. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits … generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (internal citation and quotation marks omitted); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("an official capacity suit is another way of pleading an action against an entity of which the officer is an agent"). Accordingly, official capacity claims are governed by the municipal liability standards governing *Monell* claims. *See Estate of Sims ex rel. Sims v. Cnty. of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007).

To state a claim under *Monell*, the plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Ibid*. (internal quotation marks omitted). "An official policy or custom may be established by means of [1] an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs.,* 675 F.3d 650, 675 (7th Cir. 2012); *see also Milestone v. City of Monroe,* 665 F.3d 774, 780 (7th Cir. 2011).

With regard to his medical care claim, Defendants contend that Shultz has not pleaded that they had a policy of depriving detainees of necessary medications. Doc. 11 at 5-6. Yet Shultz's brief asserts—in a passage that the court must consider on a Rule 12(b)(6) motion, *see Geinosky*, 675 F.3d at 745 n.1—that "Dart and Cook County have implemented a policy of denying or delaying necessary prescription medication to detainees at the Jail." Doc. 17 at 4. Shultz notes that the same alleged policy is at issue in *Parish v. Sheriff of Cook County*, 07 C

7

4369 (N.D. Ill.), a pending § 1983 suit brought on behalf of a class of Cook County Jail detainees. Dart and Cook County moved to dismiss the medical care claims in *Parish* for failure to satisfy *Monell*, and the district court denied the motion. *See Parish*, 07 C 4369, Docs. 31-32, 34. Dart and Cook County do not explain why a different result is warranted in this case. At this point, Shultz has a viable medical care claim under *Monell*; he alleges that Defendants had a policy of denying or delaying necessary prescription medication to detainees at the Jail, and that this policy caused him to suffer severe depression. *See Sanville*, 266 F.3d at 734 (holding that "[t]he need for a mental illness to be treated could certainly be considered a serious medical need"); *Smith v. Hallberg*, 2012 WL 4461704, at *8 (N.D. Ill. Sept. 25, 2012) (holding that "[m]ental health issues such as those suffered by Plaintiff … have been recognized by the courts to be an objectively serious medical condition" where the plaintiff alleged that he suffered from severe depression). Whether that claim can survive summary judgment is open to question at this point. *See Jackson v. Pollion*, __ F.3d __, 2013 WL 5778991 (7th Cir. Oct. 28, 2013) (holding that an inmate deprived of blood pressure medicine for a short period of time, resulting in a slight blood pressure elevation over the normal range, did not establish that he had suffered a serious medical condition).

On the unlawful detention claim, Dart contends not that Shultz has failed to allege a policy or custom, but that he falls outside of the Fourth Amendment's protections and that his Fourteenth Amendment claim fails on the merits. Doc. 11 at 6-8. It is true that the Fourth Amendment governs the period of confinement immediately following an arrest or warrantless seizure through the probable cause hearing, *see Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006), and that Shultz had a probable cause hearing shortly after his arrest. But after Shultz was sentenced to time served and told by the judge that he was free to leave, he once again

became a free person and thus protected by the Fourth Amendment. *See* 730 ILCS 125/4 ("The warden of the jail shall receive in such jail, *until discharged by due process of law*, all persons who are committed to such jail by any competent authority.") (emphasis added); *Lewis*, 853 F.2d at 1372 ("We … can conceive of instances where the administrative process involved in releasing an individual from custody could violate his fourth amendment rights."); *Barnes v. Dist. of Columbia*, 242 F.R.D. 113, 118 (D.D.C. 2007) (holding that the plaintiff class stated a viable Fourth Amendment claim where they alleged that "despite being entitled to release, they were taken back into custody and transported to D.C. Jail" and were thus "essentially … re-arrested or re-seized," and noting that "[t]hese allegations of Fourth Amendment violations are sufficient to survive a motion to dismiss, and further development of the record should disclose whether the seizures were reasonable."); *Arline v. City of Jacksonville*, 359 F. Supp. 2d 1300, 1308-09 (M.D. Fla. 2005) (addressing under the Fourth Amendment the plaintiff's claim that he continued to be detained following his acquittal).

In any event, Shultz also pursues his unlawful detention claim under the Fourteenth Amendment. *Cf. Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992) ("Does the distinction between … search and seizure, and due process … make any practical difference? Probably not, since whether the issue of duration [of confinement] is addressed under the Fourth Amendment or under the due process clause, the benefits of confinement to the government must be compared with the costs to the person confined."). The substantive component of the Fourteenth Amendment's due process guarantee recognizes that the detention of an individual without legal authority may constitute a deprivation of liberty without due process of law. *See Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013) (treating the plaintiffs' alleged detention beyond the terms of their sentences as a "substantive-due-process violation"). In *Harper*, the Seventh

Circuit held that whether the plaintiff's detention following the issuance of bond is unreasonably long "will depend on how long [the] detainee was held after bond was posted and what justifications there might be for the delay on that particular day or for that particular detainee— the time of day, whether the jail was processing an unusually large number of detainees at that time, whether other events occurring at the jail legitimately slowed processing times, whether the detainee's lack of cooperation delayed processing, etc." 581 F.3d at 515. The facts surrounding Shultz's continued detention are sufficiently unclear at this stage of the case that the unlawful detention claim survives dismissal.

Dart also contends that because Shultz could have availed himself of "other procedural safeguards" under state law, including a common law false imprisonment claim, he has no due process claim. Doc. 11 at 7; *see Parratt v. Taylor*, 451 U.S. 527, 537 (1981). However, the availability of state law remedies is pertinent only to procedural due process claims, not to substantive due process claims. *See Sizemore v. Williford*, 829 F.2d 608, 611 (7th Cir. 1987) ("*Parratt* is thus not applicable to instances where the substantive guarantees of the Constitution are alleged to be violated, as opposed to alleged violations of procedural due process.") (internal citation and quotations omitted); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 872 (7th Cir. 1983) (same).

On the inadequate supervision claim, Dart again argues not that Shultz has failed to allege a policy, but that "[w]hatever Sheriff Dart's practice is regarding the stationing of officers within the tier, [Shultz] makes it clear that the cause of his injuries was not that practice, but a subordinate that disobeyed that practice" by being absent from the tier. Doc. 11 at 8. Dart's reading of Shultz's claim is incorrect. Shultz alleges that "[t]he practice of defendant Dart is to permit tier officers to be stationed in each hallway of Division 2, Dorm 2, out of sight and

hearing of detainees," Doc. 5 at ¶ 12; that the officers are "unable to be summoned for help should trouble erupt," *id*. at ¶ 11; that during the attack, Shultz "cried out for help, but no correctional officer came to [his] assistance," *id*. at ¶ 10; and that it was "because" of this policy that "no correctional officer came to his aid," Doc. 17 at 7. Give these allegations, the absence of an assigned guard is irrelevant—at least at this stage of the case, when all inferences must be drawn in Shultz's favor—because even if the guard had been present, he would have been unable to see the attack or hear Shultz's cries for help.

## Conclusion

For these reasons, Defendants' motion to dismiss is denied except as to the individual capacity medical care claim against Dart. The dismissal of that claim is without prejudice and with leave to replead. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible."); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("As a general matter, Rule 15 ordinarily requires that leave to amend be granted at least once when there is a potentially curable problem with the complaint or other pleading."). If Shultz wishes to replead that claim, he must file a second amended complaint by November 14, 2013. If Shultz does not file a second amended complaint, Defendants shall answer the surviving portions of the amended complaint by November 21, 2013. If Shultz files a second amended complaint, Defendants shall answer all but the individual capacity medical care claim, and shall answer or otherwise plead to the individual capacity medical care claim, by December 5, 2013.

October 31, 2013

_____
United States District Judge